## HUGHES *v.* MOORE.

1812

March 4th.

*Present....All the judges.*

A Plaintiff may before verdict, discontinue a Count in his declaration, and wave the issues joined

ERROR to the Circuit Court for the District of Columbia, sitting in Alexandria.

This was a special action of *assumpsit*, brought by Moore against Hughes. The declaration, after several amendments, contained four counts.

1. The first count stated, that whereas on the 16th of June, 1797, it was agreed between the Plaintiff, and one John Darby, by a writing *under their hands and seals, now here shown to the Court,* in substance as follows : " whereas *Cleon Moore,* had located in his own name, 9922 acres of land in Kentucky, by a treasury warrant No. 19,100," " and the said Cleon Moore, hath sold all his *right, title and interest* of, and in the same, to John Darby, for the consideration of 300*l.* and warrants that no person or persons claiming under John Tebbs, now deceased, or under him the said Cleon Moore, shall interrupt him, the said John Darby, in his said claim to the said lands, but as to all other claims he is to run the risk, and on their account, will never require, that the said Cleon Moore, or any other person or persons, shall refund the said 300*l.* or any part thereof, but if there should be as much land secured by the said location, as will bring two thousand pounds or upwards, the said John Darby, is to pay the said Cleon Moore 700*l.* in money, over and above the said three hundred pounds, so that he may receive altogether, one thousand pounds ; otherwise the said Cleon Moore is only to have the said consideration of three hundred pounds." At the bottom of which writing, was a receipt in these words, " Received of John Darby, the sum of three hundred pounds, the full consideration for the first mentioned location, in the foregoing agreement, or of his right, title, and interest of, and in the same—Cleon Moore, and a seal. And whereas on the same day, a memorandum in writing, and under the seals of the Plaintiff and the said Darby, was added and indorsed on the said agreement as part thereof as follows : " Memorandum—If a patent or patents have already issued for the first within mentioned location, the said Moore, doth agree to assign the same, to the within named John Darby, his heirs and assigns ; or if not issued, that they issue in the name of the said Cleon Moore, and he is to assign them to the said John Darby, his heirs and assigns ; and if in the opinion of any two respectable men in the neighborhood of the said lands, to be mutually chosen, shall say the said lands will sell for two thousand pounds, or upwards, the said John Darby doth bind himself, his heirs and assigns, to pay unto the said Cleon Moore, his executors,

HUGHES
*v.*
MOORE.

A promise, to pay a sum of money as a compensation to the Plaintiff for the injury done him by the misconduct of the Defendant in obtaining a patent in his own name for land which he ought to have patented in the name of the Plaintiff, and in preventing the Plaintiff from obtaining a patent in his own name, and in consideration of the Defendant's having procured the patent to be issued to himself, is a contract for the sale of land within the statute of frauds, and must be in writing. Oyer of a deed set forth in the first count does not make that deed part of the record so as to apply it to other counts, in the declaration.

HUGHES  administrators and assigns, the sum of seven hundred
*v.*  pounds, as herein mentioned."
MOORE.

"And whereas the said *Defendant*, afterwards, on the 5th of October, 1799, well knowing the contract and covenants aforesaid, between the said Cleon Moore and John Darby, and more especially well knowing that a patent or grant had not then been issued for the tract of 9922 acres, located in the name of the said Cleon Moore, and well knowing that the patent for that land ought, and could only be issued unto the said Cleon Moore, and well knowing that the said Cleon Moore was entitled to the sum of 700*l.* lawful money of Virginia, of the value of 2,333 dollars, and 33 cents, provided, in the opinion of any two respectable men in the neighborhood of the said lands, to be mutually chosen, they should say the said lands would sell for 2,000*l.* or upwards, lawful money of Virginia; and whereas the Defendant, well knowing that the said lands were really and truly worth, on the day and year la mentioned, a much greater sum than 2,000*l.* and well knowing that it would materially injure the Plaintiff in his contract aforesaid, and would materially benefit the said John Darby and himself, the said Defendant, he the said Defendant, on the said 5th day of October, &c. assigned the plat and certificate of survey, made of the said 9922 acres, and a warrant numbered 19605, in the name of the Plaintiff, unto himself, the said Defendant, and the said John Darby, without any lawful authority, so to do from the said Cleon Moore, by making and subscribing the said assignment of the said survey, in the name of him, the said Cleon Moore, by him the said James Hughes, as attorney in fact, for the said Cleon Moore, which assignment, imported a desire of him the said Cleon, that patents might issue in the names of the said Darby and Hughes, intending thereby to defraud and injure the said Cleon Moore, and to benefit himself and the said John Darby, in respect to the premises aforesaid. And whereas the said James Hughes, by means of the herein before mentioned assignment, *had caused and done to the Plaintiff, an injury to the value of a great sum of money*, to wit, the value of 4,000 dollars, *which he was disposed to compensate*; the said James Hughes in consideration thereof, afterwards, viz: on the 17th of March, 1806, came to an agreement with

the said Cleon Moore,—whereby the said Cleon Moore, promised, that he would *quit all claim to the said tract of land, and discharge the said James Hughes of, and concerning all damages for, and by reason of his actings and doings aforesaid, in assigning the survey in manner aforesaid;* and he the said James Hughes, promised to the said Cleon Moore, that he would pay to him the sum of 700*l.* when he should be thereafter required; and the Plaintiff avers, that he has been always ready to keep, and has always kept his promise aforesaid, in consideration of which premises, the Defendant became liable to pay to him, the said sum of 700*l.* &c. and being so liable, the Defendant in consideration thereof, undertook," &c.

2. *The second count,* stated, that whereas on the 5th of October, 1799, the Plaintiff was owner and proprietor of a certain plat, and certificate of survey, of 9922 acres of land in Mason county, in the state of Kentucky, dated the 28th of November, 1796, of the value of 20,000 dollars, and whereas the Defendant well knowing the premises afterwards, viz.—on the 5th of October, 1799, without any lawful authority from the Plaintiff, and with a view to benefit himself, and a certain John Darby, and to injure the Plaintiff, in this particular, assigned the last mentioned plat and certificate of survey unto him the said Defendant, and the said John Darby, by subscribing the name of the said Cleon Moore by the said James Hughes, as Attorney in fact, for the said Cleon Moore; and in consequence of the said unauthorized assignment, a grant of the said tract of land was afterwards made to the Defendant, and the said Darby, by the Commonwealth of Kentucky, styling them assignees of the Plaintiff. And whereas the Defendant, by the assignment aforesaid, had caused and done to the Plaintiff an *injury and loss* to the value of a great sum of money, viz. to the value of 4,000 dollars, which he was willing to repair and compensate; in consideration thereof, the said Defendant afterwards, viz. on the 7th of March, 1806, at the county of Alexandria, &c. promised to pay to the Plaintiff, the sum of 700*l.* lawful money of Virginia, *as compensation for the said injury and loss of the said land assigned as aforesaid.*

The said Plaintiff at the same time agreed to the said terms, and to accept of the said compensation *in full of*

HUGHES.
v.
MOORE.

all claims and demands for the said land, and for the injury
aforesaid. And the Plaintiff avers, that he has always
kept his promise aforesaid, and has been at all times
ready and willing to do every thing on his part to be
done; and afterwards, viz. on, &c. at, &c. *offered to perform*
*the agreement* on his part, and the Defendant then and
there refused to perform, &c. whereby the Defendant
became liable, &c. and being so liable, promised to
pay, &c.

3. *The 3d count stated,* that whereas the Plaintiff, by
virtue of a certain land warrant issued, &c. on the 26th
of September, 1783, duly located by entry on the 7th
of December, 1783, and duly executed by actually sur-
vey, duly made on the 28th of November, 1796, a plat
and certificate whereof, had been duly made and deli-
vered according to law, was entitled to have a grant
from the commonwealth of Kentucky, by patent to be
founded on the said survey, and to be completed and
issued to him of 9922 acres of land in the county of Ma-
son. &c. bounded, &c.—And whereas the Defendant
had on the 5th of October, 1799, (the Plaintiff, being
so entitled to have the land patented to him aforesaid,
and the Defendant well knowing the premises,) for his
own gain and advantage, and to the great wrong and
damage of the Plaintiff; without any lawful authority to
that effect from the Plaintiff, and without his knowledge
or consent, but under color and pretence of being At-
torney in fact for the Plaintiff, wrongfully, injuriously
and wilfully made and executed in the name of the Plain-
tiff, a certain indorsement in writing, upon the back of
the said plat and certificate of survey, purporting to be
an assignment by the Plaintiff, of the said plat and cer-
tificate, to one John Darby and the said James Hughes,
for value received, and purporting to express a desire
of the Plaintiff, that patents might issue in their names,
and purporting to be subscribed with the name of the
Plaintiff, by the said James Hughes, his Attorney in
fact. And whereas the said James, afterwards, viz. on
the 5th of April, 1800, (the Plaintiff being entitled to
have the said land patented to him as aforesaid,) with-
out any authority to that effect from the Plaintiff, and
without his knowledge or consent, by means of the said
pretended assignment, and under color of the same, for
his own gain and advantage, and to the great wrong

and damage of the Plaintiff, wrongfully, injuriously and wilfully caused and procured the land so located and surveyed for the Plaintiff as aforesaid, and bounded as aforesaid, to be granted by the commonwealth of Kentucky, to them the said John Darby and James Hughes, by patent, bearing date, &c. founded on the said warrant and survey, and on the said pretended assignment of the plat and certificate, and signed by James Garrard, the Governor, and sealed with the seal of the said commonwealth of Kentucky, and in all respects, finally completed and issued to them the said Darby and Hughes, and entered of record in the land office of Kentucky, aforesaid. And the Plaintiff says, that the said land was patented to the said Darby and Hughes, by the procurement and pretences of the said James as aforesaid, without the Plaintiff's having ever in any manner authorized, contracted, or consented, that the same should be patented in the name of any other person or persons whatsoever, other than himself.—And the Plaintiff produceth here in Court, a copy of the said patent, &c.

And whereas, afterwards, on the 13th of March, 1806, at Alexandria, &c. a conversation was had, and propositions for an accord and satisfaction, were moved between the said James and the Plaintiff, concerning a *compensation for the loss and a liquidation of the damages sustained* by the Plaintiff, by reason of the misconduct and wrong doing of the said James in the premises, and of the vesting them, the said Darby and Hughes, with the legal title to the said land as aforesaid; and it was then and there agreed by the said James on his part, in consideration of the premises, and of the just claims of the Plaintiff for compensation and damages as aforesaid, that the said James should pay to the Plaintiff in satisfaction of the same, 700l. Virginia currency, equal to 2,333 dollars and one third of a dollar, currency of the United States, to be paid in four equal quarterly instalments, the first in three months, &c. each instalment to be secured by a bond of the said James; and the Plaintiff agreed to accept the said 700l. by instalments as aforesaid, in full satisfaction of his just claims as aforesaid, and upon the said instalments being secured by the bonds of the said James, as aforesaid, to release and quit claim to the said James, all the Plain

<div align="right">HUGHES<br><i>v.</i><br>MOORE.</div>

HUGHES
v.
MOORE.

tiffs claims and demands whatsoever, for *compensation,* *redress, or damages arising from the wrong doing and* *misconduct of the said James, in the premises, and from the* *vesting the said Darby and Hughes with the legal title to* *the said land as aforesaid.* The count then states, that the Defendant promised to fulfil the agreement on his part, and the Plaintiff on his part. That the Plaintiff is, and always was ready and willing to perform his part, if the Defendant would perform his. That he afterwards required the Defendant to perform his part, and offered to accept, and would have accepted of the Defendant the 700*l.* in instalments as aforesaid, and secured by bonds as aforesaid, in full satisfaction of all the claims and demands of the Plaintiff for compensation, redress and damages as aforesaid, and did then and there offer to perfect and execute, and would have perfected and executed to the said James, a good and sufficient quit claim and release to him, of all the Plaintiffs claims and demands for compensation, redress or damages, arising from the misconduct and wrong doing of the said James, in the premises, and from the vesting of the said Darby and Hughes, with the legal title to the said land as aforesaid, if he, the said James, would have secured by his bonds duly executed, the said 700*l.* &c. But the Defendant refused to perform his part of the agreement, &c.

4. *The 4th count stated* that whereas, on the 5th of October, 1799, the Defendant without any lawful authority to that effect, but for his own gain and advantage and to the great wrong and damage of the Plaintiff, with intent to prevent the land hereinafter mentioned, from being patented to the Plaintiff, and to cause and procure the same to be patented to the Defendant and one John Darby, wrongfully, injuriously and wilfully made and executed in the name of the Plaintiff, a certain other indorsement in writing, upon a certain other plat and certificate of survey duly made for the Plaintiff, on the 28th of November, 1796, the said survey having been so made in due execution of a certain other warrant duly issued in favor of the Plaintiff, from the land office of Virginia on the 26th of September, 1783, &c. and in pursuance of a location and entry, &c. which last mentioned indorsement purported to be an assignment, &c. from the Plaintiff to the said John

Darby and the Defendant, for value received, &c. pur- HUGHES
porting to be subscribed, &c. And whereas the De-      v.
fendant had, on the 5th of April, 1800, in further pur- MOORE.
suance of his said intent to prevent the land from being
patented to the Plaintiff, and to cause it to be patented
to the said Darby and the Defendant, wrongfully and
without authority, and under color of being attorney in
fact for the Plaintiff, caused the land to be patented to
the said Darby and the Defendant, &c.—and the Plain-
tiff produceth here a copy of the patent, warrant, sur-
vey, &c. &c.—and the Plaintiff avers, that he never au-
thorized the Defendant to make the said assignment,
and that the Defendant knew he had no such authori-
ty—that it was made without the Plaintiffs knowledge
or consent—that the Plaintiff was, until the issuing of
the patent to Darby and the Defendant, entitled to have
the land patented to himself—by which wrong doing of
the Defendant, the Plaintiff had suffered great wrong
and injury and was entitled to be compensated in dam-
ages by the Defendant, and to be indemnified for being
prevented from having the land patented to him, and
for the same being patented to Darby and the Defen-
dant. And whereas afterwards, on the 13th of March,
1806, a conversation was had and propositions for a
compromise were moved between the Plaintiff and De-
fendant, touching the compensation and indemnification
of the Plaintiff, and the Defendant then and there *agreed*
in consideration of the just claims of the Plaintiff to be
compensated for the damage and injury arising *from
the misconduct of the Defendant in the premises, and in
consideration of the Defendants having procured a patent
to be issued to him and Darby for the land,* that the De-
fendant would pay to the Plaintiff another sum of 700*l.*
Virginia currency of the value, &c. which the Plaintiff
agreed to accept in satisfaction of his just claims to
compensation arising from the causes and considera-
tions last aforesaid ; and the Defendant in considera-
tion of his said agreement, assumed and promised to
the Plaintiff that he, the Defendant, would perform his
part of the agreement. And the Plaintiff in considera-
tion of that promise agreed to accept the 700*l.* in satis-
faction, &c. as aforesaid and upon payment of the same
or upon its being secured to be paid in four instalments,
&c. that he, the Plaintiff, would quit claim and release
to the Defendant all the Plaintiffs claims and demands

HUGHES  and rights whatsoever to compensation for being pre-
*v.*  vented from having the land patented to him, *and for*
MOORE.  *and on account of the same being patented to the said Dar-*
*by and the Defendant*—and the Plaintiff says that he was
and hath ever since been willing and ready to perform,
&c. and requested the Defendant to perform, &c. and
offered to accept, &c. the 700 *l*, &c. in full satisfaction,
&c. and offered to quit claim, &c. all the Plaintiffs
claims for compensation, &c. if the Defendant would
pay, &c. but he refused, &c.


The Defendant, having prayed oyer of the agree-
ment and the memorandum, of which a *profert* was made
in the first count, pleaded *non assumpsit* to *that* count,
and so in like manner to each of the other counts sepa-
rately; upon all of which pleas, issues were joined.


2d. The Defendant, (without again praying oyer,)
for further plea to each of the counts, severally, said,
that the promise alleged to be made by the Defendant
to the Plaintiff, or any memorandum thereof, was not
in writing, signed by the Defendant or any other per-
son by him thereunto lawfully authorized, and this he is
ready to verify, &c.


3. The Defendant also without again praying oyer,
for further plea to each of the counts, severally, said,
"that after making the agreement and memorandum
"between the Plaintiff and the said John Darby, in the
"declaration mentioned, viz. on the 29th of August,
"1799, Alexander D. Orr, and John Graham, two re-
"spectable men residing in the neighborhood of the
"lands, in the said agreement mentioned, were mutually
"chosen by the Plaintiff, and the said John Darby, to
"say and determine whether the said lands would sell
"for two thousand pounds, or upwards, and the said
"Alexander D. Orr, and John Graham, afterwards,
"viz. on the 29th of August, 1799, did say and deter-
"mine, that the Plaintiff's *claim* to a survey of 9922
"acres, in the county of Washington, being the land
"in the said agreement, and memorandum mentioned,
"would not sell for 2000*l*. Virginia money, and this he
"is ready to verify," &c.

4. The Defendant also, without again praying oyer, pleaded separately to each count, " that there was not as much land secured by the said location in the agreement mentioned, as would bring 2,000l. or upwards, and this he is ready to verify, &c. The Plaintiff demurred generally to the second plea, to all the counts, and to the 3d and 4th pleas, to the 2d, 3d and 4th counts.

To the 3d and 4th pleas to the 1st count, there was a general replication and issue.

The Court below adjudged all the demurrers in favor of the Plaintiff.

The Plaintiff then entered a *noli prosequi* upon the first count of his declaration, and waved all the issues joined thereon. Upon the issues of *non assumpsit* to the 2d, 3d and 4th counts, there was a verdict and judgment for the Plaintiff.

After the jury had retired to consider of their verdict they returned into Court and requested the Court to determine whether a verdict for the Plaintiff would give to the Defendant all the right and interest of the Plaintiff and his heirs in the patent of land in the declaration mentioned, and the Court instructed them that if the Plaintiff should recover a judgment in this case, he would be thereby barred in equity from setting aside the patent issued to the Defendant and the said John Darby in the declaration mentioned. To this instruction the Defendant excepted; and brought his writ of error.

SWANN AND C. SIMMS, for the Plaintiff in error contended,

1. That the Plaintiff had no right to *discontinue* as to the first count and wave the issues on that count, without the leave of the Court, or the assent of the Defendant.

2. That the statute of frauds was a good bar to every count in the declaration, and

3. That if it was not, the Court erred in instructing

HUGHES.
*v.*
MOORE.

HUGHES
*v.*
MOORE.

the jury that a recovery in this suit would bar the Plaintiff in equity from setting aside the patent.

1. The Plaintiff had no right to discontinue as to the first count, after issue, *Cro. Jac.* 35, 316. The oyer being once prayed and granted, the agreement and memorandum were spread upon the record, and the Defendant had a right to avail himself of it in all his pleas. The Defendant had a right to show that the title of the Plaintiff to those lands was never worth 2,000*l.* and therefore he was never entitled to any thing more than the 300*l.* which Darby had paid him—consequently the obtaining a patent in the name of Darby and Hughes, could be no injury to the Plaintiff, and if the Plaintiff did promise to pay the 700*l.* it was a promise without consideration. This was the real substantial defence in the cause. In order to entitle the Plaintiff to recover, he must not only prove that the Defendant did a wrong action, but that it did an injury to the Plaintiff. 1. *Bac. Ab.* 50. 6. *Mod.* 46.

2. As to the plea of the statute of frauds. By the act of assembly of Virginia, *p. p.* 15, which is like that of Kentucky, it is enacted that no action shall be brought, whereby to charge any person upon any contract, for the sale of lands, tenements, or hereditaments, unless the *promise or agreement* upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

The contract set forth in each count of the declaration is a *contract for the sale of land.* It is a contract whereby the Plaintiff was to part with all his title to the land; and it is immaterial whether that title was legal or equitable.

The first count states expressly, that the Plaintiff "*promised to quit all claim to the tract of land,*" and the Defendant promised to pay 700 *l.*

The 2d count also states, that the Defendant was to pay the 700*l.* as compensation for the injury and *loss of the land;* and the Plaintiff agreed to accept it "*in full of all*

claims and demands for the said land and for the injury aforesaid."

<div style="float:right"></div>

The 3d. count says, that a conversation was had concerning a *compensation for the loss*, and a liquidation of the damages, *sustained by the Plaintiff by reason* of the misconduct and wrong doing of the Defendant, and *of the vesting them, the said Darby and Hughes, with the legal title to the said land*, and it was agreed *in consideration of the premises*, that the Defendant should pay to the Plaintiff 700*l*. in full satisfaction of the Plaintiffs *claims as aforesaid*, and the Plaintiff agreed, upon such payment being made, to quit claim to the Defendant all the Plaintiffs claims *for compensation*, &c. arising from the wrong doing and misconduct of the Defendant in the premises " *and from the vesting the said Darby and Hughes* " *with the legal title to the said land.*"

The 4th count states that the Defendant agreed, in consideration of the just claims of the Plaintiff to be compensated for the damage and injury arising from the misconduct of the Defendant in the premises, and *in consideration of the Defendants having procured a patent to be issued to him and Darby for the land*, that he, the Defendant, would pay the Plaintiff another sum of 700*l*, &c.

Thus the quit-claim of the Plaintiffs title to the land is the consideration of every promise in the declaration; and if the Plaintiff had no title, or if no title was to pass from the Plaintiff, by the contract, it was *nudum pactum*.

3. If this was not a contract for the sale of the Plaintiff's title to the land, a judgment for him in this suit could not have barred the Plaintiff from setting aside the patent in equity. There seems to have been an inconsistency in the opinions of the Court below. If the agreement extinguished the Plaintiffs equitable title, then it was an agreement for the sale of land, and ought to have been in writing. If it did not extinguish the Plaintiff's equitable title, then it could not bar him from setting aside the patent.

Jones *and* C. Lee, *contra*.

This was a case of naked *tort*—there is no evidence

HUGHES of any authority from Moore to Hughes to make this
   *v.* transfer, but it was done by the latter with a full know-
MOORE. ledge that it was contrary to the Plaintiff's intention. It
was of itself an injury to the Plaintiff for which he was
entitled to redress. It was actionable *per se.*

But suppose that a judgment for the Plaintiff in this
case should prevent him from setting aside the patent,
yet it does not follow that it is a case within the statute
of frauds. Contracts executed are not within that sta-
tute. If there be a verbal agreement for the sale of land,
and the vendor executes his part of the agreement by
conveying to the purchaser the legal title; which he ac-
cepts, and receives the possession and the title papers,
it is not necessary that the vendor should have a pro-
mise in writing from the purchaser, in order to compel
him to pay for it—a Court of Chancery would decree
him to execute the contract.

The Plaintiffs subsequent ratification of the act of the
Defendant, was equivolent to his previous assent. The
contract then was executed on the part of Moore. The
Defendant had all his title—and the possession—and the
title papers. No further act was necessary on the part
of the Plaintiff.

Besides, it does not appear that the contract on the
part of the Plaintiff, if there was any, for the transfer
of his right, was not in writing. If it was necessary
that it should have been in writing, it will, after verdict,
be presumed to have been so. 1. *Chitty on pleadings,*
133. 1. *Sand.* 276 *(a.) note* 2. 4 *East.* 400.

As to the *Noli Prosequi*—the Plaintiff has a right to
enter it at any time before verdict, and even after ver-
dict, before judgment. *Sayer on damages,* 113. 12,
*Mod.* 558.

The Defendant could not by oyer of the agreement
stated in the first count, make that agreement applica-
ble to other counts which do not refer to it. The 3d
and 4th pleas were only applicable to the first count.

It is immaterial whether the Plaintiff actually sustained
damage to the value of 700 *l.* It is sufficient if he sus-

tained any damage at all. It is an action for liquida- HUGHES
ted damages, and it is immaterial what was the real in- *v.*
jury which the Plaintiff suffered. 7 *Vin.* 300—*Tit Dam-* MOORE.
*ages. S.—Moore* 419,+ *Colman's case.*—4. *Burr.* 2228,
*Lowe v. Peers.*—1. *Lord Raym.* 1164.

The Court below was correct in the opinion, that a
judgment in this suit would have barred a suit in equity
to set aside the patent. It was only an agreement for
the extinguishment of an equitable right which need not
be in writing. It transfered nothing to the Defendant.*

MARCH 7th.....*All the Judges being present,*

MARSHALL, *Ch. J.* delivered the opinion of the Court
as follows :

Much of the seeming intricacy of this cause will dis-
appear, if we extricate the questions made by the plead-
ings before the Court, from others which might greatly
embarrass and perplex it.

The declaration contains four counts. The first re-
cites an original contract between Cleon Moore and
John Darby, for the sale of certain lands, lying in Ken-
tucky, and proceeds to recount in detail those transac-
tions on which the action was founded. The other
counts state, in different terms, the several assumpsits,
which they allege to have been made.

The Defendants crave oyer of the written contract,
stated in the first count, and file several pleas to that

---

* It is understood that the opinion of the Court below was grounded on
the idea that this case was to be governed by the principles relative to implied
trusts which are not within the statute of frauds. Darby & Hughes having
obtained the legal estate without the assent of the Plaintiff, were to be
considered as holding it in trust to secure to him the payment of 700l. in case
the land should turn out to be worth 2,000l. This was an implied trust,
resulting from the circumstances of the case, and which would cease to exist
upon payment of the 700l. Upon the Plaintiff's receiving payment of that
sum, his equitable title would cease. It would not be transferred to the De-
fendant ; but would be extinguished. If the 700l. mentioned in the declara-
tion were to be considered as the compensation for the injury done in depriv-
ing the Plaintiff of his legal security for 700l. to be paid upon a contingency,
it is evident that that injury could not have exceeded 700l. And whether it
were to be paid as compensation for that injury, or as the sum which would
be due upon the happening of the contingency, it would equally destroy the
implied trust. And as an implied trust can be raised without writing, so it
was thought, it could be extinguished without writing.

HUGHES
*v.*
MOORE.

count. They then, without repeating the oyer, file similar pleas to the remaining counts. After taking issue on some of the pleas, and demurring to others, the Plaintiff below discontinues his first count.

By the counsel for Hughes, this has been considered as error. But the Court can perceive no reason for this opinion. After this discontinuance, the parties are in precisely the same situation, as if all the issues both of law and fact which were joined upon that count, had been decided in favor of the Defendant below. Such decision could not, in point of law, have affected the rights of the parties under the issues joined on the remaining counts, and consquently the discontinuance upon that count must leave those rights unimpaired. Whether this count remain in the declaration, or be stricken out of it, the right of the Plaintiff in the Circuit Court, to recover on the other counts, will be precisely the same. The examination of this right must be conducted on the same principles as if the declaration had never contained the first count.

By the Plaintiff in error it is contended, that the oyer, which was prayed of the written contract alleged in the first count, spreads that contract on the record, and makes it a part of all his subsequent pleas. This is certainly true with respect to all his subsequent pleas to that count, but not with respect to his pleas to the other counts. Different counts allege different contracts, and different assumpsits. It is upon this idea alone, that a verdict can be rendered for the Plaintiff, on one count, and for the Defendant on another. Now the oyer of one contract cannot be the oyer of another contract, and cannot spread upon the record a contract supposed to be totally distinct from that which was read. The discontinuance of the first count produces no change in this respect, in the condition of the parties. Had it remained, it could have had no influence on the other counts, nor could the oyer of the written contract it stated have transferred that contract to the other counts.

The second count states, that Cleon Moore was owner and proprietor of a plat and certificate of survey for lands lying in Kentucky, for which he was entitled to a patent from the government of that State; and that

James Hughes, without authority, transferred that plat and certificate, in the name of Cleon Moore to John Darby and the said Hughes, by which wrongful act a patent for the said land was issued to the said Darby & Hughes to the great injury of the said Moore. That afterwards the said Hughes promised to pay to the said Moore, "the sum of seven hundred pounds for the said injury, *and loss of the said land* assigned as aforesaid; the said Plaintiff at the same time, agreed to the said terms, and to accept of the said compensation in full of all claims and demands for the said *land* and for the injury aforesaid."

To this count, the Defendant pleaded several pleas, one of which was, that neither the promise nor any memorandum thereof was made in writing. To this plea the Plaintiff demurred, and the Court sustained the demurrer.

The correctness of this decision depends entirely on the application of the statute of frauds to the *contract* stated in the declaration.

Cleon Moore is averred to have been the proprietor of a plat and certificate of survey on which Hughes & Darby obtained a patent by using his name without authority. This tortious act did not divest Moore of his equitable title. The land, in equity, was his. Did he part with this title by the contract stated in the declaration? The answer must, in the opinion of the whole Court, be in the affirmative. "He agreed to accept of the said compensation in full of all claims and demands for the said *land*, and for the injury aforesaid. This, then, was an *agreement* to sell his equitable title to the land for the sum of seven hundred pounds. The Court can perceive no distinction between the sale of land to which a man has only an equitable title, and a sale of land to which he has a legal title. They are equally within the statute.

It is, therefore, the unanimous opinion of this Court, that the judgment upon the demurrer to this plea, ought to have been in favor of the Defendant below. This plea being a complete bar to the second count, it is unnecessary to consider the other pleas.

HUGHES
*v.*
MOORE.

The third count states the title of Cleon Moore, and the injury sustained by him to the same effect with the second count. It then states a conversation between the parties, " concerning a compensation for the loss, " and a liquidation of the damages sustained by the said " Cleon, by reason of the misconduct and wrong doing " of the said James in the premises, and of the vesting " them, the said Darby & Hughes, with the legal title to " the said land as aforesaid ; and it was then and there " agreed by the said James, on his part, in considera- " tion of the premises, and of the just claims of the said " Cleon, for compensation and damages as aforesaid, " that the said James should pay to the said Cleon, in " satisfaction for the same, the sum of 700*l.*" &c. " And " the said Cleon then and there agreed, on his part, to " accept of the said seven hundred pounds in full com- " pensation of his just claims as aforesaid," and, upon the same being secured, &c. to release and quit claim to the said James, all his, the said Cleon's, claims and de- mands whatsoever, for compensation, redress or da- mages arising from the wrong doing and misconduct of the said James in the premises, and from the vesting the said Darby & Hughes, with the legal title to the said land as aforesaid.

To this count also, the statute of frauds was pleaded in bar. The Plaintiff below demurred to the plea, and the Defendant joined in demurrer.

Upon the true construction of the *contract* stated in this count, there was some contrariety of opinion among the judges. It is, however, the opinion, of the majority that the *contract* must be understood to import a *sale of land,* and that the sum of money stipulated to be paid, was, in contemplation of the parties, to *extinguish the ti- tle of the said Cleon Moore.*

The conversation was " concerning a compensation " for the loss and a liquidation of the damages sustained " by the said Cleon," not only " by reason of the mis- " conduct of the said Hughes, but also by reason " of " the vesting them, the said Darby & Hughes, with the " legal title to the said land." " And it was then " agreed, in consideration of the just claims, of the said " Cleon, for *compensation and damages,* that the said

" James, should pay the said Cleon, in satisfaction for " the same, the sum of 700*l*." To the majority of the Court, it seems, that a compensation for the loss of the title to the land must be understood to be a compensation for the land itself, and that the receipt of this money by Cleon Moore, would not only have barred an action for damages, *but a suit in equity for the title.*

If this opinion be correct, then the *contract is substantially for the sale of land, and, to be valid, ought to have been in writing.* On this plea also the demurrer ought to have been overruled.

The fourth count states the injury more in detail, than is done in either the second or third counts. It states the claim of Cleon Moore to be compensated for the loss sustained by his land being granted without his consent to Hughes and Darby. A conversation was then held, and " propositions for a compromise were made, touching the compensation and indemnification of him, the said Cleon," " and it was then and there agreed by the " said James, in consideration of the just claims of the " said Cleon, to be compensated for the damage and " injury for the misconduct of the said James in the pre- " mises, and in consideration of the said James having " procured and obtained a patent to be completed and " issued to the said James, and the said John Darby, as " last aforesaid, for the said land," that he, the said James, would well and truly pay the said Cleon, one other sum of 700*l*. This the " said Cleon agreed to " accept in satisfaction of his just claims to compensa- " tion arising from the causes and considerations last " aforesaid."

The compensation here offered and accepted, is for the injury sustained by Cleon Moore, in consequence of the grant of his land, by the state of Kentucky, to Hughes and Darby. It seems to the Court, that this compensation was in lieu of the patent itself, and must have been intended to *extinguish his right to that patent.* It is difficult to suppose an intention, in this case, to receive a full compensation for the loss of a title, and yet to retain the right to that title. The majority of the Court is of opinion that, under the *contract* as stated in this count also, the payment of the money agreed to be

HUGHES
*v.*
MOORE.

HUGHES   paid, would have *extinguished* the right of Cleon Moore
*v.*     to the land in question, and that this CONTRACT likewise
MOORE.   is substantially a *contract* for the sale of land. The demur-
———————  rer, therefore, to this plea ought to have been overruled.

It is unnecessary to examine other points which were
made in the cause. The judgment of the Circuit Court
must be reversed, and judgment rendered for the Plain-
tiff in error.

*Judgment reversed.*