## JACKSON, *ex dem.* HUNGERFORD and others, *against* EATON.(*a*)

The act of *April* 14, 1820, (sess. 43. ch. 245.) relative to deeds for military bounty lands, does not apply to the case where the subscribing witnesses to the deed are produced, at the trial, to prove its execution, or where such evidence is there offered as is competent to prove its execution at common law.

THIS was an action of ejectment, brought to recover the possession of one half of lot number ninety, in *Cincinnatus*. *Daniel Hungerford*, a soldier, who served in the revolutionary war, was owner of the lot, and died during the war, leaving six children, of whom *Levi H.* was the eldest, and heir at law. It was admitted, that the lessors were children of the

(*a*) This cause was decided in *January* term, 1822.

A deed, therefore, which has not been proved, or acknowledged or recorded, according to the first section of the act of the 12th *April*, 1813, (sess. 36. ch. 97.) on being proved at the trial, by evidence competent at common law, may be read in evidence.

A person who has executed a deed, set up by a defendant in ejectment, is not a competent witness, to prove it fraudulent, especially after the lapse of 26 years, when, by avoiding the deed, the recovery of the plaintiff would enure to the common benefit of the plaintiff and the witness. No one, but the party to a deed, who alleges the fraud to have been practised upon him, or those claiming title under him, will be allowed to impeach or avoid the deed, on that ground.

soldier, but all younger than *Levi H.* The defendant of-
fered in evidence a deed from *Levi Hungerford*, to *Daniel*
*Hungerford*, for the whole lot, dated *November* 17, 1796,
the consideration of which, as expressed, was 500 dol-
lars. This deed was not proved or acknowledged, until
the 18th day of *September*, 1820, when it was proved
by *Isaac Burnham*, one of the subscribing witnesses, be-
fore *Frederick W. Atwater*, a commissioner. The read-
ing of this deed in evidence was objected to by the plaintiff's
counsel, on the ground that *Burnham* was interested in the
event of this suit, at the time he proved the deed; and to
show his interest, the plaintiff introduced a deed executed by
*Burnham*, in 1807, for two thirds of the premises in ques-
tion, in which deed were covenants of warranty and seisin.
The Judge decided, that the deed could not be read in evi-
dence without further proof. The defendant then called
*Joseph White* as a witness, who testified, that he knew
*Charles Mudge*, one of the subscribing witnesses to the deed;
that *Mudge* was dead, and that he was acquainted with
his handwriting, and had seen him write, and that he be-
lieved the name of *Mudge* to the deed to be his proper
handwriting; and also, that he had seen *Burnham* write,
and was acquainted with his handwriting, and believed his
handwriting, as a witness, to be genuine. To this evidence
the plaintiff's counsel objected, but the Judge permitted the
deed to be read. It was admitted that, in the year 1812,
*John Diell* caused an ejectment to be brought against one
*Hawley*, then on the lot; that in that suit, all the children of
the soldier, and *Charles Brown*, *Isaac Burnham*, and *John*
*Diell*, were lessors; that a recovery was had, and a writ of
possession issued, and possession taken in 1813, and that the
possession was not taken by any person claiming title under
the deed from *Levi* to *Daniel H.* until that time.

The defendant then introduced a deed, duly proved, from
the executors of *John Diell* to himself, dated in 1815, for
the consideration of 1600 dollars, for the whole lot, and
proved that he had made beneficial improvements on the lot.

The plaintiff then called *Levi Hungerford* as a witness.
The defendant objected to the introduction of this witness,
but the Judge permitted him to be sworn, subject to all ob-

jections. He testified, that he never, to his knowledge, gave his brother *Daniel* a deed ; he recollected having signed one or two papers in relation to the lot, at the request of *Robert Dickson*, who married one of his sisters. *Dickson* undertook to procure the lands ; that the witness never received from *Dickson*, or any one else, any consideration for the land. On his cross examination, the witness, on being shown the deed in question, said, the signature looked like his handwriting, and that, at the time he signed the papers, *Dickson* agreed to give him part of the land when he obtained it.

By direction of the Judge, a verdict was taken for the plaintiff, for one half of the premises, subject to the opinion of the Court on the foregoing case.

*Oakley*, and *Parker*, for the plaintiff.

*Cady*, and *Morse*, for the defendant.

VAN NESS, J. delivered the opinion of the Court.

The lessors of the plaintiff have shown, *prima facie*, a title to half of the lot ; and the question is, whether the defendant, on his part, has shown either a better title in himself, or one outstanding in some other person ; and whether he has or not, depends upon the decision of the following points :

1st. Was the deed from *Levi Hungerford*, the heir at law, at the time of the death of the soldier, to his brother *Daniel*, sufficiently proved on the trial ? and if it was, then,

2d. Did the deed pass the title to the whole, or to a part of the lot only ?

1. The deed from *Levi H.* to *Daniel H.* was not proved or acknowledged until the 18th of *September*, 1820, when it was proved by *I. Burnham*, one of the subscribing witnesses, before a commissioner ; but it never had been recorded. *Burnham* having had, in 1807, conveyed two thirds of the lot, with full covenants of warranty and seisin, was, I think, properly held to be an incompetent witness to prove the deed before the commissioner, as he would have been, if he had been offered as a witness to prove the same fact on the trial. The testimony of *White*, who proved the

handwriting and death of the subscribing witness, *Mudge*, and also of *Burnham*, would, in ordinary cases, be sufficient to entitle the defendant to give the deed in evidence to the jury. But, by the act of the 14th of *April*, 1820, it is enacted, that no deed relating to the title of any part of what is called the military tract, executed on or before the 1st of *May*, 1797, should thereafter be read in evidence, in any Court of this state, unless the same be acknowledged or proved according to the provisions of the first section of the act concerning deeds, passed the 12th of *April*, 1813, any thing in the seventh section of said act, or any law to the contrary notwithstanding. It is argued, that this deed not having been acknowledged or proved, cannot be read in evidence. Seldom, if ever, perhaps, has a statute of so much importance been passed, with so little regard to the previous existing law, and with so little attention, so to word it, as to effectuate the intention of the legislature. In the case of *Jackson*, ex dem. *Yates*, v. *How*, (19 *Johns. Rep.* 80.) we had occasion to examine the provisions and phraseology of this act, and we were enabled, fortunately, to give it a construction, by which the rights of many persons were preserved, which would have been destroyed, in case we had found ourselves obliged literally to follow the language in which it is couched. Another case is now presented of nearly the same kind. According to a literal interpretation of this act, it would seem, that no deed for lands in the military tract, could, at all, under any circumstances, be read in evidence, unless it was actually proved or acknowledged according to the first section of the statute of 1813; but that was not, and most certainly could not have been the intention of the legislature. And in the case just adverted to, we decided, in a class of cases of which the deed therein mentioned was one, that such was not their intention. It is evident, that all the statutes, including that of the 14th of *April*, 1820, provide for giving deeds, or the records or transcripts of deeds, in evidence, when proved, acknowledged, or recorded, pursuant to the various provisions which these statutes contain. And it is equally clear, that they do not apply to cases where the subscribing witnesses are *produced on the trial*, or where such

other evidence of the execution of a deed is offered at the trial as was admissible at common law. In this case, the deed was not to be given in evidence, either as proved, acknowledged, or recorded, according to any of the statutes; (*Burnham's* proof of it being rejected,) but upon such evidence as was competent to prove its execution at common law. The act of *April,* 1820, therefore, does not touch this case.

2. *Levi Hungerford,* being the heir at law of the soldier, who died during the war, and having conveyed the whole lot to *Daniel Hungerford,* on the 17th of *November,* 1796, the title to the whole lot passed by virtue of that deed to the grantee, according to the provisions of the seventh section of the act of the 8th of *April,* 1813; (1 *N. R. L.* 305.) and the defendant has thus, shown a title out of the lessors of the plaintiff.

The lessors of the plaintiff have alleged, that this deed from *Levi Hungerford* was obtained from him by fraud; and he was offered as a witness to prove this allegation, twenty-six years after the deed was given. To his competency as a witness, as well as to the evidence he gave, the objections are insuperable.

(1) As to his competency; the lessors of the plaintiff seek to recover an undivided moiety of the premises; and this deed being out of the question, they are tenants in common with *Levi Hungerford,* and the recovery in this suit would be for their common benefit; for, if they entered under a recovery in this suit, such entry would enure to the benefit of *Levi,* in proportion to his interest in the lot. If a suit should be brought for the mesne profits, the judgment in this action would be conclusive; and the damages recovered would be for the use of *Levi,* in the same proportion.

(2) As to the evidence he gave: The lessors of the plaintiff have no right to set up the fraud alleged to have been practised upon *Levi.* He, or those claiming under him, alone can avoid the deed on that ground. This, as to the lessors of the plaintiff, is res *inter alios acta.* No fraud was used as to them. They claim under a title separate from, and independent of *Levi,* and not derived in any way through him; they have no right to impeach the deed

for this cause. But, admitting that *Levi* was a competent witness, and that the lessors of the plaintiff might legally avail themselves of the fraud alleged to have been committed upon him, I think his testimony very loose and unsatisfactory, particularly after he has suffered this deed to remain unquestioned for such a very long period. He does not deny that he gave the deed, but complains that he never received any consideration for it, and states that he has no recollection of having executed a deed for his share of the land. This is the amount of his testimony; and if such evidence were allowed, to set aside a deed, especially for a military lot, the consequences would be terrible.

The defendant is, accordingly, entitled to judgment.

Judgment for the defendant.