## W. T. HADDUCK *versus* J. WILMARTH.

It is no objection to the testimony of a witness, that it goes to invalidate a title derived by deed from such witness.

If a man takes a conveyance of land from one, while another is in the open and visible possession of the same land, he will be presumed to have known every thing in relation to the title which could have been obtained by the most diligent enquiry.

And if, in such a case, the person in possession has an equitable title to the land, the taking of the conveyance will be deemed a fraud, and nothing will pass to the grantee.

It is not an offence in this state to purchase land of one, while another is in possession adversely.

THIS was a writ of entry brought to recover a tract of land in Lime, in this county, and was tried here upon the general issue at November term, 1828.

It was agreed, that one J. B. Pelton, was once seized of the demanded premises ; and the demandant claimed the land under said Pelton's deed, dated February 23, 1827.

The tenant then offered in evidence a deed, made by Thomas Page, as deputy collector of taxes of the United States, which purported to convey the demanded premises to one Edward Howard, and was dated the 18th February, 1819. He then showed in evidence the deed of the said Howard, dated the 19th February, 1819, which purported to convey the same premises to himself.

No evidence was offered to prove, that Page, in making sale of the land for taxes, pursued the directions prescribed by the statutes, which provided for the assessment and collection of direct taxes, laid by the United States. The tenant offered in evidence the testimony of J. B. Pelton, the demandant's grantor, who testified that a few days before the right to redeem the land, sold as aforesaid by Page to Howard, expired, he agreed with Howard, that he would not redeem the land, and that Howard should receive a deed of the land from Page, the

deputy collector. He further testified, that he was to receive from Howard $220, for waiving his right to redeem, the greater part of which sum had been paid to him, and that he was present when Howard conveyed the land to the tenant, and made no objection. The tenant immediately entered, under his deed, and remained in possession until the commencement of this suit.

The court instructed the jury, upon the above evidence, that if they believed that Pelton made the agreement with Howard, as above stated, not to redeem the land, and received a valuable consideration therefor, it was in law a waiver of his right to call for Page's authority to convey the land to Howard; but however this might be, if they believed that the tenant was in actual possession of the premises at the time the demandant received his deed, and that fact was known to him, and that Pelton was present when the deed from Howard to the tenant was made, and knew for what purpose it was made, and did not object, the tenant was in law entitled to a verdict.

Under these directions the jury returned a verdict for the tenant, and the demandant moved for a new trial.

*Hadduck*, pro se.

*L. Woodbury* and *Kittredge*, for the tenant.

Argument on the part of the demandant.

Was the instruction given by the court to the jury in relation to the waiver correct in point of law?

This instruction can be sustained only on the ground, that the agreement between Howard and Pelton operated as a change of title, and passed the title of Pelton; or that it operated as an estoppel to him to set up his title afterwards. 2 N. H. Rep. 33, *Atherton* v. *Johnson*. This agreement could, at most, amount to no more than an executory agreement to release. 2 Johns. Cases, 223; 7 Johns. Rep. 285; 10 ditto, 246; 9 ditto, 330 and 35; 13 ditto, 235; 3 Mass. Rep. 352; 12 ditto, 415.

To give this agreement the effect of a release would

be against the statute, and make it operate as a convey-ance of real estate by parol. 7 Cranch, 191, *Hugh* v. *Moore.* Pelton had the legal title, and his agreement to release, or not claim title, should have been in writing ; and not being so, can have no effect to transfer the title. Can interests and titles in lands be granted and pas-sed without the formalities prescribed by the statute ? Could Howard have set up a title against Pelton under that agreement ?

Pelton is not estopped by the agreement to claim title. No one can be barred of his right to land by estoppel ex-cept by deed or record. 15 Mass. Rep. 153 ; 17 ditto, 433 ; 14 ditto, 141.

In the next place, were the instructions given to the jury, in relation to the possession of the tenant and in re-lation to Pelton's being present when the premises were conveyed by Howard to the tenant, correct ? Wilmarth was in possession, under a recorded title, which goes back to the collector. Can there be any presumption to a purchaser, that one, who is in possession under a re-corded title, is in under another title not recorded ? The express title upon record takes away all implied secret titles, and the express notice any constructive or implied notice. It is only as to Howard's title that any implied or constructive notice is attempted to be set up. The notice of his deed the plaintiff of course had, for it was recorded. And what other notice could he have, than such as he would derive from that deed ? How could there be any implied notice that he held, not under that deed, but under a parol agreement with Pelton. It is said that the demandant had an implied notice, that when that deed was executed Pelton was present and did not object, and that he is to have this implied notice from the fact that the tenant was in possession under a deed from Howard—or in other words, when a party is in possession under a title of record, there is an implied notice that he is in, not under that title, but under a con-

structive legal waiver of right, or estoppel on the part of, and in favor of some one far back in the chain of title ; and this too, when the chain of title is made out and upon record.

Starting from the same source, for the demandant and tenant both claim under the same original title, a *bona fide* purchaser under the person in whom the equitable and legal title is, and ever has been, without any actual notice of any waiver or agreement not in writing, and in direct opposition to the statute, is by this construction of the law to be defeated, because he knew that the tenant was in possession under a claim of title, acknowledged to be void, and because a third person took the agreement or word of his grantor, that he would surrender or release his title, without deed or writing. The possession of Wilmarth was not adverse to the title of Pelton. They claimed from the same source. 1 Caine's Rep. 444, *Johnson v. Reynolds* ; 2 ditto, 215 ; 3 ditto, 118 ; 4 Johns. Rep. 202 ; 7 ditto, 186 ; 18 ditto, 94 ; 2 Cowen, 568.

The farthest courts have gone, upon the subject of implied or constructive notices, has been, that possession under an unrecorded deed is equivalent to a recorded deed. Where there is a recorded title, any implied notice is done away, and the party shall be presumed to be in under his recorded title. 20 Johns. 482, *Jackson v. Eaton* ; Sugden's Law of Venders, 498—499. Bacon's Ab. " Mortgage, E."

Suppose, in this case, the demandant had actual notice that Pelton did not object to the conveyance by Howard to the tenant. Pelton could have said nothing which would have given to the purchaser any information not disclosed by the deeds and the transaction itself. Wilmarth was not misled as to Pelton's title. He knew that he was buying, and Howard was selling, the title of Pelton. It was not a case, where a party stands by and conceals his title. The whole transaction was based upon the title of Pelton ; what then could Wilmarth suf-

Hadduck
*v.*
Wilmarth.

fer by Pelton's silence? Suppose Pelton had said, he had agreed with Howard not to claim the land, would that have made Wilmarth's title any better? Because I stand silent by and see another sell my house, to one who has a full knowledge of my title, am I to be ever after precluded from setting up a title to it? A mere standing by does not amount to a fraudulent concealment of title. For admitting that Pelton knew the subject matter of the conveyance from Howard to the tenant, he had a right to suppose that Howard was selling no other claim or right than he bought, and *that* he knew to be good for nothing, and so did Howard and Wilmarth. It is not the same as if, without any pretence of title, Howard had attempted to convey in Pelton's presence.

If Wilmarth supposed he was buying any thing more than Howard's title, why, as Pelton was present, was not his title extinguished?

It is not disputed, that where an individual, who has a secret or concealed title to lands, suffers them to be sold to a person ignorant of the title, and unable to know any thing of it by due diligence, and fraudulently conceals his title, so that an innocent person may be injured by it, if it prevail, he shall be estopped from setting up his title against such purchaser. 1 Chipman, 48. But that principle is not applicable in this case. Pelton concealed nothing, because there was nothing which Wilmarth did not know.

The testimony of Pelton, the demandant's grantor, ought not to have been admitted to impair his deed to the demandant. 4 Mass. Rep. 707; 12 ditto, 440.

Argument for the tenant. It is said, that the testimony of the demandant's grantor, Pelton, ought not to have been received. But the authorities cited by the demandant are mere *obiter dicta*, are overruled in other cases, or are entirely irrelevant. On the contrary, there are authorities directly in point which sustain his competency. 2 L. Raymond, 1008, *Title* v. *Grevett*; 11 Mass. Rep. 374 and 498.

24

With respect to the instructions given by the court to the jury, there can be no doubt that the demandant, purchasing with a full knowledge of all the facts, must stand in the same situation that Pelton would, were he the demandant in this case. 11 Mass. Rep. 378. This principle of law is so familiar as to require no further citation of authority in its support.

The next thing to be considered then, is, whether Pelton could sustain an action against Wilmarth? The naked statement of the case carries with it to every honest and honorable mind, a decisive answer in the negative. Pelton's land had not only been sold for the taxes, but he had received from Howard a full consideration for its value beyond the taxes, and agreed that the collector should convey the land to Howard. After this was done, Pelton was present at the conveyance of the same land, by Howard to Wilmarth, without making either objection or claim. To permit Pelton, after all this, to disturb Wilmarth in his possession, and recover back the land, would be to permit one of the grossest frauds ever attempted. Neither courts of common law nor courts of chancery are so unreasonable, and it has been repeatedly decided, that a person so conducting is barred from a subsequent recovery. 5 Johns. 129, *Lawrence* v. *Houghton*; 2 Johns. 573, *Niven* v. *Belknap*; 9 Mod. Rep. 35, *Savage* v. *Foster*; Roberts on Frauds, 130; 1 Fonb. 161; 10 Johns. 457; Powell on Mortgages, 183; 1 Espin. N. P. C. 58; 8 Mass. Rep. 441; 2 Atkins, 49; 1 Peere W. 280.

The grounds of these decisions may be various, but a leading one is, that no person in possession of land shall be disturbed by another, who claims title through a fraud, or who by his recovery, will be allowed to perfect a fraud. 3 N. H. Rep. 170, *Scoby* v. *Blanchard*.

The reasoning on the other side, upon this point, and the authorities cited, go upon the erroneous supposition that this is an action to recover the land of Pelton.

Whereas, in fact, Wilmarth has long been in possession, and this suit is an attempt, through a fraud, to regain land which has been sold and conveyed. Thus all that is said about the statute of frauds in the argument, and many of the authorities cited, are inapplicable to the facts of the case. And the question of actual fraud—whoever might be the demandant, is entirely overlooked in the argument, and its bearings not examined. If we are correct in these conclusions, it becomes unnecessary to examine farther the charge of the court in respect to the possession of Wilmarth.

But the whole argument of the demandant, upon that point, rests upon a fallacy ; because it entirely omits the circumstance, that Pelton was present when Wilmarth took his deed, without making any claim or objection. The demandant, purchasing under such a state of things, was bound to inquire into the circumstances of Wilmarth's title ; was bound to know all that Pelton knew, and can now stand on no better ground than Pelton would stand, were he the demandant in this case.

The first question is, was the testimony of Pelton properly received ? The objection to this testimony is, as we understand it, that Pelton, having by deed conveyed to the demandant all his title to the demanded premises, ought not to be permitted to impair that title by his evidence. But the cases cited by the demandant do not sustain the objection. It is well settled, that the rule, which precludes a witness from invalidating an instrument by his testimony, to which he has given credit by his signature, is confined to negotiable securities, and applies to those, only under particular circumstances. 2 N. H. Rep. 212.

The next inquiry is, whether this demandant can, under the circumstances of the case, stand upon any better ground than his grantor ?

This question has been repeatedly settled. The rule is, if any man buys land of one, while another is in the

open and visible possession of the land, he who buys, will be presumed to have known every thing in relation to the title of the person in possession, which could have been obtained by the most diligent inquiry. *Pritchard* v. *Brown*, Hillsborough, October 1828 ; *Colby* v. *Kenniston*, Grafton, November 1827.

But it is said, that as Wilmarth was in possession under a recorded title, there could be no ground for a purchaser to presume that he was in possession under any other title, and that therefore the rule ought not to be applied in this case. This does not seem to us to be a good reason why this case should be exempted from the operation of the rule. What are the facts ? The demandant bought of Pelton a pretended title to land, of which the tenant was in the open and visible possession, under a claim of title. Now by the common law of England, it is an indictable offence to buy such a title. The law is the same in Massachusetts and in New-York. Hawkins, P. C. book 1, chap. 86 ; 5 Pick. 348, *Brinley* v. *Whiting* ; 5 Johns. 489, *Williams* v. *Jackson*. But it seems to have been the general impression of the bar, that the common law in relation to buying and selling pretended titles, was never adopted in this state. 1 N. H. Rep. 178. It has undoubtedly been very generally understood, that, if the grantor has a right of entry, the land will pass by his deed to the grantee, although a third person may be in possession. And it is very clear that the land would not pass in such a case, if the transaction were illegal. It has certainly not been decided here, that a purchase, like that of this demandant, is unlawful. But it has been settled in the cases before cited, that the rule to be applied in such cases is, that he who buys lands thus situated, shall be presumed to know all the circumstances relating to the title of the person in possession. This presumption is raised, not because the possession is in itself calculated to give knowledge of all the circumstances,

but because it has been thought, no encouragement ought to be given to such purchases ; because the grantee in such a case ought not to be permited to stand on any better footing than the grantor ; and because the person in possession should not be placed in a worse situation than he would have been, had no conveyance been made. It is for these reasons that the law raises this presumption.

Such being the nature of the rule, it is apparent, that it applies with all its force in this case. The demandant bought a pretended title to land, which was in possession of the tenant, and must be presumed to have known all the circumstances under which the tenant held the land.

What were those circumstances ? The demanded premises had been sold for taxes under a statute of the United States. Howard had been the purchaser, just before the time, limited by law for the redemption of the land thus sold, expired. Howard bought of Pelton all the interest of the latter in the land, and it was agreed between them that Page, the deputy collector, should give Howard a deed of the land, and that Pelton should not redeem. Page accordingly gave Howard a deed, and the next day Howard, having this color of title, in the presence of Pelton, sold and conveyed the land to the tenant, Pelton making no objection. The case does not state whether the land was sold for the direct tax of 1816, but we should conclude from the time when Page made the deed, that it was sold for the tax of that year, and it is very clear, that the deed should have been given, not by the deputy collector, but by the collector of the district where the land was situated.

Whatever may be the legal defects, however, in the tenant's title, we entertain no doubt, that a court of equity would, under the circumstances, compel Pelton to make a good title. The tenant has then a good title in equity. Sugden, 481 ; 2 Johns. Rep. 573, *Niven* v. *Belknap*.

The demandant has then bought a pretended legal title for the purpose of turning the tenant, who has an equitable title, out of possession, and the case comes within the principle decided in *Scoby* v. *Blanchard*, 3 N. H. Rep. 177 —178 ; and we are of opinion that the jury were properly directed, and that there must be

*Judgment on the verdict.*