# BELL *v.* TWILIGHT.

A deed of release and quitclaim in fee by tenant for life, is not a forfeiture of the estate for life.

A widow released and quitclaimed to the demandant land, of which her husband had been seised during coverture, and the demandant claimed and received from the tenant, who was in possession of the land under a deed from the grantee of the husband, a conveyance of part of the land for the life of the widow, in lieu of her dower. *Held,* that the demandant was not estopped to claim an estate in the whole land, for the life of the widow, under a prior unregistered deed from the grantee of the husband, conveying the land to her for her life.

A power in a mortgage to sell the land and pay the debt, is part of the security, and an interest in the land; and as such, is protected by the statute against a prior unregistered deed.

To charge a mortgagee with notice of an unregistered deed, by reference in his mortgage to the description of the premises in an elder mortgage to another party, the account of the unregistered deed in the mortgage referred to, must be so far correct and intelligible as to give direct notice, or necessarily lead, on proper inquiry, to notice of the prior deed.

To constitute notice of an unregistered deed, possession under it must be exclusive and unequivocal. A mixed possession is not sufficient.

Where the same person has an interest in land and a power to sell, and makes a conveyance proper to convey his interest, and also to execute his power, the conveyance shall operate to convey his interest, and not to execute the power.

WRIT OF ENTRY, brought on the 8th of August, 1843, to recover a tract of land, situated in Sandown in the county of Rockingham, containing seventy acres, being that part of the homestead farm lately owned by Daniel Fitts, deceased, lying east of the road.

The tenant pleaded *non tenure* as to part of the demanded premises, and *nul disseisin* as to the remainder, upon which pleas, issues were joined. The demandant agreed that upon the issue

upon the plea of *non tenure*, a verdict should be found for the tenant.

The demandant offered in evidence a quitclaim deed from Hannah Fitts, to him, dated on the 2d day of October, 1841, releasing all her right to that part of the homestead of Daniel Fitts lying on the east side of the road, (which was the land in controversy.) Also, all her right in land leased by Ebenezer Fitts to Daniel and Hannah Fitts, on the 19th of July, 1824, and also all her right of dower whenever it should be assigned her.

The demandant then introduced a lease from Ebenezer Fitts to Daniel and Hannah Fitts, dated and acknowledged on the 19th day of July, 1824, and recorded on the 25th day of April, 1836. The lease was to the lessees and the survivor of them, during their lives and that of the survivor, the rent was one dollar per year, if demanded, and payable in the month of November, if demanded.

The demandant then offered a deed from Daniel to Ebenezer Fitts, dated and acknowledged on the 18th day of May, 1824, and recorded on the 19th of July, 1824, conveying the same land described in the preceding deed and in the lease, which, though bearing different dates, were executed and delivered on the same day.

The tenant then moved the Court to nonsuit the demandant, on the ground that the lessee, having only an estate for life had assumed to convey a fee, and that this operated a forfeiture of the leasehold estate ; but the motion was overruled by the Court.

It appeared that Daniel and Hannah, his wife, always lived on the premises until his death, January 30th, 1841, and that for eight or ten years previous to his death, he had been infirm and unable to labor. In relation to the place of residence of Ebenezer Fitts, and to the manner of carrying on the place, Maynard Hunkins, a witness for the demandant, testified that Ebenezer had lived on the farm more or less, and that his family generally lived there when they were about Sandown, but lived at Exeter while Ebenezer was there.

Hannah Fitts testified, that Ebenezer lived there when the

lease was made, and had always lived on the farm, which was his home ; that he went to Exeter in May, 1833, and returned in April, 1834 ; that he soon went away and returned in August ; that while he was absent, his family went to Sanbornton, to the house of his wife's father, and about the first of October, he and his family returned. She also testified, on being called a second time, "that he went to Sandown to live, in May, 1833, and returned about the middle of May, 1834. His family were moved there in June, 1833, and remained there most of the time that he did. She and her husband lived on the farm while he was away. Ebenezer lived at Exeter, on account of some debt. He did not come home while he lived there. From Exeter he came home, and remained until May 13, 1834, then went away, and returned in August."

In relation to the farm, Mrs. Fitts stated that she paid a man for haying while Ebenezer was absent, in 1833, the sum of ten dollars, which hay was put into her husband's barn, and his cattle ate it ; that Ebenezer cut wood and timber from the place, from 1837 to 1841, and that she had seen him haul off coal ; that he always carried on the farm before he went to Exeter, and also before he made a certain journey to Maine, or caused it to be done, and lived there after his return from Maine ; that in the spring of 1833, either she or Ebenezer employed men to do the spring work ; that Ebenezer agreed with these men that they should do the planting at the halves, and one half the crops was received by her and her husband. She also stated that there were cattle and sheep on the farm owned by her husband, which were pastured in his pasture and kept in his barn, and some of which she disposed of herself, and that she had several daughters who lived at home and helped to do the work in the family.

William French, 3d, a witness for the tenant testified, that he and a man named Cram, carried on the farm in the year 1833, by agreement with Ebenezer, before he went to Exeter, and did the planting, harvesting, &c. ; that Ebenezer's home had always been on the farm, and on his return from Exeter, he went back to the farm and managed it ; that he hired three acres of the farm of the tenant in 1848 and '49, for which he agreed to pay.

him rent. It also appeared that Ebenezer was taxed in Exeter in the year 1834.

George Smith testified that he was one of the selectmen of Exeter, in 1834; that between the 1st and the 6th of April, 1834, he called on Ebenezer for his inventory, and received it; that Ebenezer had lived there before, but the witness did not know when he came there.

The tenant then offered in evidence a deed of mortgage in fee with covenants of warranty of the demanded premises, dated, acknowledged, and recorded, on the 29th of March, 1834, made by Ebenezer to the demandant. The execution by Ebenezer Fitts was admitted. The mortgage was conditioned to pay a note for $400, payable by Fitts to Bell, on demand, with interest; also the balance due on account from Fitts to Bell, and to indemnify Bell for all damages he might sustain by reason of a bond of indemnity made by Bell, as surety for Fitts. There was a provision in the deed that, on non-payment of either of said sums in eleven months, Bell might sell enough of the land at auction to raise said sums, and give a clear title thereto. It was stated in the deed, that the premises conveyed were described in a mortgage deed dated on the 1st of May, 1833, and made by Fitts to the Exeter Bank. Upon the back of the deed there was an assignment by Bell to Twilight, (in consideration of $100,) of Bell's book account against Ebenezer Fitts, and of the within mortgage, and the land. The assignment was dated on the 29th of April, 1837; was under seal, witnessed, and acknowledged. The tenant then offered a deed from Bell to Twilight, dated, acknowledged, and recorded on the 29th of April, 1837, by which, in consideration of $110, he released all his right and title to the home farm occupied by Ebenezer Fitts, and formerly owned and occupied by Daniel Fitts; also, a deed from Twilight to Bell, in which Twilight was described as of Exeter, dated, acknowledged, and recorded on the 29th of March, 1842, by which he quitclaimed to Bell all his right and interest in certain land, being part of the Daniel Fitts farm, and containing sixty acres, to hold during the natural life of Hannah Fitts, and Bell to have the same right as if the land had been set off

to Mrs. Fitts as her dower. To both these deeds the demand-
ant objected as immaterial, and contended that the last described
deed was immaterial, because it was a release of that part of the
land to which the tenant had pleaded *non tenure*.

The tenant then introduced a sealed instrument signed by Bell,
dated the 29th of March, 1842, stating that he had received a
conveyance of a part of the Fitts farm during the life of Mrs.
Fitts, which was in full of her right of dower in that part of the
farm lying east of the road, provided that, if Bell should be un-
able to hold it by the deed from Twilight, Mrs. Fitts was not to
be precluded from having her dower assigned anew.

The tenant then proved that a notice, signed by Bell, was
posted up, that on the 30th of July, 1836, there would be sold
by auction all the right which Ebenezer Fitts had in 1832, in
the homestead farm formerly owned by Daniel Fitts, and then
occupied by Ebenezer; also the Colby place, occupied by Ebe-
nezer; the first tract containing one hundred acres, and the
other containing seven acres. On the back of the notice pro-
duced, was an entry made by George Gilman, the clerk of the
auction, that the home farm was struck off to the tenant at $110,
and that the Colby place was not sold.

The demandant then introduced a copy of a mortgage deed,
made by Ebenezer Fitts to the Exeter Bank, dated, acknow-
ledged, and recorded, on the 1st day of May, 1833, of the de-
manded premises. In this deed the premises are described as
consisting of four several tracts of land, of one hundred, fifty,
eighty, and five acres, respectively, two of which were the same
that Ebenezer Fitts conveyed to Daniel and Hannah Fitts for
their lives; and it was stated that "parts of the premises," (not
saying what parts,) "were subject to a lease and mortgage to
Daniel Fitts, and to a lease and mortgage to Sally Fitts, Betsy
Fitts, and Hannah Fitts, as by reference to the Rockingham
Records will more fully appear."

The tenant then renewed his motion for a nonsuit, which was
overruled.

The Court ruled that, by the power to sell, Bell could convey
only such a title as Fitts had, at the time Bell made his convey-

ance to Twilight ; that the notice of sale, and the quitclaim deed were a good execution of the power ; that the deed to the bank, and its record, were not competent evidence to be submitted to the jury, of constructive or actual notice of the lease to Daniel and Hannah Fitts ; that it served only to identify the premises ; that the quitclaim deed had the same operation as if it had been made by Ebenezer Fitts, and it conveyed what he could have conveyed ; that it extinguished the mortgage title, and the tenant holds under it, if he can hold at all.

A verdict was taken for the demandant subject to the opinion of the Court upon the foregoing case.

*Emery* and *Marston,* for the tenant.

1. The Court ruled that, " by the power to sell, Bell could convey only such a title as Fitts had at the time Bell made his conveyance to Twilight ; that the quitclaim deed had the same operation as if it had been made by Ebenezer Fitts, and it conveyed what he could have conveyed ; that it extinguished the mortgage title, and the tenant holds under it, if he can hold at all."

The tenant contends that this ruling of the Court was erroneous, and should have been the reverse ; namely, that by the power to sell, Bell could convey all the title Fitts had at the time the mortgage, Fitts to Bell, was made ; that the quitclaim deed, Bell to Twilight, related back to the date of the mortgage, and conveyed all the title Fitts then had ; that the tenant held by the force of the mortgage and the execution of the power therein contained.

The following authorities appear to us to fully sustain this position.

The estates created by the execution of a power take effect precisely in the same manner as if created by the deed which raised the power. Thus, suppose a general power of appointment to be given to a man by deed, and he by virtue of his power, limit the estate to A for life, with remainder to his children in strict settlement, these limitations will take effect as estates limited in the original deed, and exactly in the same way

as they would have done had they been limited in that deed, by the grantor of the power, in lieu of the power of the appointment by force of which they were created. 2 Sugd. on Powers, 16; and reference is made to *Kinnone* v. *Money*, 3 Swanst. Rep. 202.

An estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of the power, takes under the authority, and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power and the instrument executing the power, had been incorporated in one instrument. 4 Kent's Com. 337; *Bradish* v. *Gibbs*, 3 Johns. Ch. Rep. 550; *Roach* v. *Wadham*, 6 East, 289; *Maundrell* v. *Maundrell*, 10 Ves. jr. 255.

When a man makes a feofment to the use of his last will, he has the use in the mean time. If, in such case, the feoffor by his will limits estates according to his power reserved to him on the feofment, then the estates will take effect by force of the feofment, and the use is directed by the will; so that in such case, the will is but declaratory. *Sir Edward Clere's case,* 6 Co. Rep. 18.

Certain lands were conveyed to A, his heirs and assigns, in trust, to such uses as D by deed should appoint, and in default of, and until appointment, to the use of D, in fee. D afterwards, in execution of the power, by deed, duly made an appointment of the estates in favor of F, in fee. D, at the time of making the appointment, was married. His wife was held not to be dowable out of these lands. *Ray* v. *Pung*, 5 B. & Ald. 561.

1. And the reason why the widow will not be entitled to dower is, that the estate given to the appointee by the execution of the power, takes effect as if it had been inserted in, and given by the original deed creating the power; and *quasi* the act of the donor of the power, the fee in the husband is thereby devested, and with it falls the estate of dower, which, being derivative from the estate of the husband, necessarily partakes of its defeasible nature. Bell's Hus. and Wife, 269.

In *Wigan* v. *Jones,* 10 Barn. & Cress. 459, the Court say:

Bell *v.* Twilight.

It has been established, ever since the time of Lord Coke, that where a power is executed, the person taking under it takes under him who created the power, and not under him who executes it. This case was as follows: In 1822, the estate was conveyed to such uses as A, by deed should appoint, and in the mean time, to the use of himself for life. In 1826, a judgment was recovered against A, and in 1827, he mortgaged his estate, and appointed the use to D, for five hundred years. After the execution of this deed, a creditor issued an *elegit*, and extended the same upon said estate, and claimed the estate by virtue of said judgment and *elegit*. Held, that his lien upon the land was defeated by the execution of the power.

The same question arose in *Tunstall* v. *Trappes*, 3 Sim. Rep. 286, and was decided in the same manner.

And in *Eaton* v. *Sauxter*, 6 Sim. Rep. 517, it was held, that notice to a purchaser of judgments against the vendor, whose estate is limited to uses to bar dower, does not prevent the purchaser from taking the estate free from the judgments, under an exercise of the power reserved to the vendor.

Where an estate is limited to such uses as a purchaser shall appoint, and, subject thereto, to the usual uses to bar dower, an appointment made under the power, will, in equity as well as at law, overreach any judgment which may, in the mean time, have been entered up against the purchaser; and the circumstances that the appointee takes with notice of the judgment, will make no difference in this respect. *Skeeles* v. *Shearley*, 3 Milne & Craig's Rep. 111; 2 Sugd. on Powers, 35 – 37.

2. The power was well executed by Bell. The notice, sale at auction, by Bell, and the quitclaim deed from him to Twilight, were a good execution of the power in the mortgage deed, Fitts to Bell; it appearing that the book debt of Bell against Fitts, was due at the time of the sale and the execution of the quitclaim deed. The ruling of the Court upon this point, we contend was right.

The power may be executed without reciting it, or even referring to it, provided the act shows that the donee had in view the subject of the power. 4 Kent's Com. 334; 1 Sugd. on

Powers, 373 ; *Hunloke* v. *Gell*, 1 Rus. & Mylne, 515 ; *Nowell* v. *Rooke*, 2 Bing. Rep. 497.

A will is deemed a good execution of the power, if it dispose of the subject of the power, although it does not refer to the power. *Walker* v. *Mackie*, 4 Rus. Rep. 76 ; 1 Sugd. on Powers, 430, 431.

*A fortiori*, a person executing a deed disposing of the subject of the power, must be considered as having in view the property that is the subject of the power, at the time of the execution thereof. There are other facts in this case clearly showing what Bell had in view at the time of the execution of his deed to Twilight. He had previously acted under the power by advertising and selling the property. The deed subsequently made, was only completing that transaction.

3. The Court further ruled, " that the deed to the bank and its record, were not competent evidence to be submitted to the jury, of constructive or actual notice of the lease to Daniel and Hannah Fitts." We contend that this ruling was, in the main, correct.

It was not actual notice. Nothing less than the actual recording of the lease itself can be deemed to constitute actual notice thereof, unless it be actual knowledge of the same, brought home to the party.

Was it constructive notice to either Bell or Twilight, of the existence of the lease under which Bell claims ?

Constructive notice is that knowledge which the Court presumes a purchaser or encumbrancer either must have acquired from circumstances that came under his cognizance, or which he wilfully, or with a negligence amounting almost to a fraud, abstained from acquiring. Miller's Equitable Mortgages, 77 ; *Evans* v. *Bricknell*, 6 Ves. jr. 191 ; *West* v. *Reid*, 2 Hare's Rep. 257.

Constructive or legal notice has been said to be, in its nature, no more than evidence of notice, the presumptions of which are so violent that the Court will not allow even of its being controverted, notwithstanding it is sometimes contrary to the fact. Per *Parker*, C. J.; *Rogers* v. *Jones*, 8 N. H. Rep. 270.

To defeat the prior registry of the second deed, there must be fraud or undoubted notice. *Humphrey et al.* v. *Given et al.*, 8 Johns. Rep. 137.

The notice must not be merely a probable, but a necessary and unquestionable inference from the facts proved. *McMechan* v. *Griffin*, 3 Pick. Rep. 149.

The true construction of the act, (registry act,) appears to be that the registry is notice of the contents of it, and no more, and that the purchaser is not to be charged with notice of the contents of the mortgage any farther than they may be contained in the registry.

Where a mortgage was for $3000, and recorded as a mortgage for $300, held notice of $300 only. *Frost* v. *Beckman*, 1 Johns. Ch. Rep. 299.

If the deed of Fitts to the bank can be noticed at all, it was notice of nothing more than was contained in the same, and that was of a lease and mortgage to Daniel Fitts, and a lease and mortgage to his three daughters, Sally, Betsey, and Hannah. It cannot be considered as either actual or constructive notice of, or even to put the party upon inquiry for a lease to Daniel Fitts and Hannah Fitts for their lives, and the life of the survivor ; *non constat*, but that the leases named in that deed were for a year ; and then the record is no notice at all. The registry is notice of nothing but what is · legally and properly recorded therein. *De Witt* v. *Moulton*, 5 Shep. Rep. 418 ; *Heister* v. *Fortner*, 2 Bin. Rep. 40 ; *Blood* v. *Blood*, 23 Pick. Rep. 80 ; *Frost* v. *Beckman*, 1 Johns. Ch. Rep. 300; *Astor* v. *Wells et al.* 4 Wheat. Rep. 466.

The registry of a deed assigning both real and personal estate, is not in itself constructive notice of the assignment of the personal estate. *Pitcher* v. *Barrows et al.* 17 Pick. Rep. 361.

The deed of Fitts to the bank cannot be considered as notice at all. The reference in the mortgage deed, Fitts to Bell, to the deed, Fitts to the Bank, was only for the purpose of a description of the premises — only for the purpose of identification. That such was the understanding of the parties is evident from the covenant of warranty against encumbrances in the mortgage deed,

43 *

---
---

Fitts to Bell. With such an understanding, neither party would think of making further examination or inquiry. It would be straining the law to a point beyond which it has never been carried, to hold that the recital in a deed, of matters recited in another, is constructive notice of the matters recited in the recited deed.

Neither Bell nor Twilight are under any necessity to resort to the deed, Fitts to the Bank, to make out the title under which the tenant claims. This doctrine of constructive notice by reason of recital in deeds, has, in England, been carried to a considerable extent, but even there it is applied only to those cases where a purchaser cannot make out a title, but by a deed which leads him to another fact, and then he will be presumed to have knowledge of such fact. 1 Story's Eq. 388; 2 Fonblanque's Eq. Book 2, Ch. 6, § 3, and notes.

The reason supporting this rule in England, does not exist here. There, the enrollment or recording of deeds is provided for only in a very few cases; and where a purchase is to be made, the title deeds are delivered to the purchaser, and hence he is bound to know the contents thereof, and to make investigation into all matters recited in the deeds; and then the rule applies only to such cases as above stated. Here, the provisions in relation to the recording of deeds is general, applying to all cases where land is conveyed or leased beyond seven years. Reliance here is had upon the record, and purchasers are generally not supposed to look or inquire beyond the record.

*Christie,* for the demandant. The tenant can show title only, 1st, as grantee under an execution of the power to convey, contained in E. Fitts's mortgage to the demandant; or 2d, as assignee of that mortgage; and these titles being inconsistent with each other, cannot coexist in him.

I. If he claims as a purchaser, under the power from Fitts, authorizing Bell to convey the land, he must rely upon the registration of the mortgage containing that power, prior to that of the lease executed by E. Fitts to Daniel and Hannah Fitts. Although the conveyance to him was subsequent to the registration of this lease, he claims that he has the same right of priority

that the demandant had. If, however, he is right in regard to the rule of law, which is not admitted, (see *Van Ranselaer* v. *Clark,* 17 Wend. Rep. 25, and *Jackson* v. *Post,* 15 Wend. Rep. 588,) still the principle does not apply to a case like the present. For the tenant claims under the execution of a power contained in the mortgage, and his rights are precisely the same as if Fitts, instead of Bell, had been his grantor.

Bell, at the time of making the deed to the tenant, had, 1st, an interest in the land, as mortgagee, and 2d, a power of sale, which were entirely separate and distinct, and have always been so regarded ; as the cases which will be referred to will show. See *Eaton* v. *Whiting,* 3 Pick. Rep. 484.

If the power was well executed, (as held by the Court,) Bell's interest was instantly devested, and Twilight's right in the land is not the interest before held by Bell, but is derived directly from Fitts. Powell on Powers, 34. In its legal operation the conveyance is the same as if Fitts had executed the deed, and this principle equally applies, as if Bell, who had the power of appointing the party in whom the use should vest, had not also held an interest in the land ; since that interest was, by the terms of the instrument creating it, liable to be devested and to terminate, at the moment when the power of sale should be executed

If it had been deemed important, either by the demandant or tenant, that the interest of the former as mortgagee should be the subject of the sale, such a form of conveyance might easily have been adopted as to have effected that purpose. But they chose rather, (assuming that the ruling of the Court as to the effect of the conveyances was correct,) that the demandant's interest as mortgagee should cease, his mortgage debt be discharged, and the tenant derive his title directly from Fitts.

The question, therefore, whether Bell had actual or constructive notice of the lease made by E. Fitts, to Daniel and Hannah Fitts, is unimportant ; as the tenant can claim no estate by conveyance from Bell, (except as merely executing a power,) and Twilight himself had constructive notice when he took his conveyance, as the case finds that the lease was then on record.

It is obvious not only from the authorities which will be cited, but from the consideration, that Bell never held any right in the land except that of a mortgagee, which he could convey only by an assignment of his debt and mortgage to an assignee, who could thereby take only a mortgage estate subject to redemption and to the other incidents of mortgages; that the title held by Twilight under his quitclaim deed, was not that held by Bell, but one which superseded or displaced it. The Court therefore, if the power was well executed, were, as we submit, right in coming to the conclusion, (and one, which can, in no view of the case, do any injustice to the tenant,) that he took his conveyance with notice of the life lease held by Mrs. Fitts, and of course subject to that lease. His grantor was, in legal effect, E. Fitts, who made that lease, and it was on record before he purchased the land.

" An appointee under a power derives his title, not from the person exercising the power, but from the instrument, by which the power of appointment was created." 4 Kent's Com. 327 ; *Doolittle* v. *Lewis*, 7 Johns. Ch. Rep. 46. " He takes under the grantor of the power." 4 Kent's Com. 337. It is on this ground held, that a *feme covert* even may, appoint to the use of her husband. *Bradish* v. *Gibbs*, 3 Johns. Ch. Rep. 549. " Whenever the estate is executed in the appointee, the uses before vested, are devested, and give place to the new uses." 4 Kent Com. 328, and cases there cited. It has been a common, but is an unnecessary precaution, not only to make an appointment by virtue of the power, but also a conveyance of the estate remaining in the grantor in default of appointment; " for if the power be valid, the execution of it would *per se* devest the estate." " The deed of appointment operates in the first place as a revocation of the old uses." Ib. 329.

See also, the case of *Roach* v. *Wadham*, 6 East's Rep. 289, which has, as we conceive, a material bearing in support of this part of the argument. See also, the authorities sustaining the same principle, referred to by the tenant's counsel ; and particularly the case of *Ray* v. *Pung*, 5 B. & A. 561, holding that the wife of the appointor, though holding an interest in fee, as well

as a power of appointment, is not dowable, on the ground that the appointee derives his title from the grantor of the power.

But it is material to be considered, that though he thus derives his title, it does not, as contended by the tenant's counsel, take effect, by relation, from the date of the power, but may be affected by an intervening notice. This is to be inferred from *Marlborough* v. *Godolphin*, 2 Vez. 78; *Southby* v. *Stonehouse*, Ib. 610; 4 Kent's Com. 338.

Twilight's title, therefore, is derived from Fitts, but it took effect at the date of the execution of the power by Bell, and, of course, after Twilight had constructive notice of the lease.

II. The facts stated in the case show, and if it does not clearly appear, it should, if necessary, be left to the jury to find, that Daniel and Hannah Fitts were in possession under their lease, when the deed was made from Fitts to the demandant, and from him to Twilight. At the time of the execution of the first-mentioned conveyance, Ebenezer Fitts was not in possession of the land, but had removed from it with his family, to another place, where he was taxed, and of which he describes himself to be an inhabitant, in his deed to Bell. Both Bell and Twilight must therefore be presumed to have had notice of the title, under which Daniel and Hannah Fitts held the land. *Colby* v. *Kenniston*, 4 N. H. Rep. 262; *Rogers* v. *Jones*, 8 Ib. 264; *Matthews* v. *Demerritt*, 9 Shepl. Rep. 312; *Kendall* v. *Lawrence*, 22 Pick. R. 540.

III. The deed from Fitts to Bell, which was assigned by indorsement to Twilight, and through which they must both trace their title, was notice to them, by its reference to the lease to Daniel and Hannah Fitts, as well as to other encumbrances upon the land. And though it erroneously refers to the lease as being on record, it does not appear that any party was misled, or that its legal effect as notice is changed. It is like the case of any other erroneous particular in a description, which does not impair its legal operation, if a sufficient description remains after rejecting it. Any party to be affected by it should have extended his inquiries not only to the record, but to the parties in possession of the land.

That the reference to this lease was matter of description, renders it none the less evidence of notice. It is, for whatever purpose it may have been recited, evidence of notice to a party, " who cannot make out a title but by a deed, which leads him to the fact." 2 Fonbl. Eq. chap. 3, § 1. He is bound to take notice of any recital, which affects the purchase he is making. Ambl. Rep. 311; 1 Story, Eq. 388, 390; Sugd. Vend. chap. 16. Such references are ordinarily descriptive, and not by way of recital of the derivation of the title. At the least, the reference was a fact coming to the knowledge of the party, which, like a conversation, a letter, or any thing else occurring *in pais*, had a tendency to show actual notice, and for that purpose, should have been held admissible in evidence.

IV. The power was not executed so as to convey a title under it. 4 Kent's Com. 330; *Croft* v. *Powell*, Comyn Rep. 603.

PERLEY, J. The deed of Hannah Fitts to the demandant was a mere release and quitclaim, and could not work a forfeiture of her estate for life. At the common law, upon feudal reasons which never prevailed in this country, if tenant for life made a forcible conveyance, which devested the seisin, and turned the estate of him who had the inheritance into a right of entry, the estate of tenant for life was forfeited. But a grant or release never had that effect. Co. Lit. 251 *b.*

Hannah Fitts, by her deed of October 2, 1841, conveyed to the demandant all her interest in the premises, including her right to an assignment of dower. The demandant, holding this title, took from the tenant a conveyance of part of the land, for the life of Hannah Fitts, in lieu of her dower. If Hannah Fitts had an estate for her life in all the land which she conveyed to the demandant, she was not entitled to dower, nor had the tenant an estate which would enable him to assign dower. The tenant takes the ground, that, by claiming and accepting an assignment of dower from the tenant, the demandant is estopped to set up an estate for the life of Hannah Fitts, which is inconsistent with the demand and acceptance of an estate for her life in part of the land, instead of her dower.

But the principle upon which estoppels *in pais* are allowed, does not apply to this state of facts ; the defendant, if the demandant owned all the land, by an assignment of dower, parted with nothing that belonged to him. By accepting part of his right, the demandant is not estopped in law to demand the rest. If it had been a question of fact for the jury, whether the demandant, when he took his mortgage from Ebenezer Fitts, had actual notice of the unregistered deed to Hannah Fitts, under which he now claims, his claiming and accepting dower of the tenant might be evidence, in the nature of an admission, that he had no such notice, and therefore had no other title than the right to an assignment of dower in the name of his grantor, and that he could not claim the land against the mortgage held by the tenant ; but, like other mere admissions, it would be no more than evidence, and might be explained or contradicted. 1 Greenl. Ev. §§ 195, 196 ; *Hathaway* v. *Spooner*, 9 Pick. 23.

The mortgage deed from Ebenezer Fitts to James Bell contained a power to sell, in these terms : "It is agreed that, upon non-payment of either of the sums aforesaid, within eleven months from the date thereof, said Bell may sell at public auction so much of said land as may be necessary to raise said sums and give a clear and indefeasible title thereto."

It may, perhaps, admit of doubt, whether such powers to sell, granted in mortgages, are valid under our statutes, which define and fix the right of redemption and provide easy and prompt methods of foreclosure. Many of the reasons, which have induced courts in other jurisdictions, after some hesitation, to give such powers effect, would not seem to prevail here. Powell on Mortgages, 13 ; 4 Kent, Com. 140.

Taking it, however, to be valid, this is not a naked power to sell ; but a power coupled with an interest, given and granted to the mortgagee as part of the security for his debt, and held and executed for his benefit, being intended to give him a more speedy and summary way of realizing the money due, than he could have by the ordinary method of entry and foreclosure. The power is part of the security and of the mortgagee's estate in the land, and, as such, passes to an assignee, with the debt

and mortgage. *Kent* says, (4 Com. 141,) " These powers fall under the class of powers appendant, or annexed to the estate, and they are powers coupled with an interest, and are irrevocable, and are deemed part of the mortgage security, and vest in any person who, by assignment or otherwise, becomes entitled to the money secured to be paid."

The statute which provides for the registration of deeds, (Rev. Stat. chap. 130, § 4,) enacts that "no deed of bargain and sale, mortgage, or other conveyance of any real estate, or any lease for more than seven years from the making thereof, shall be valid to hold the same against any person but the grantor and his heirs only, unless such deed be attested, acknowledged, and recorded, according to the provisions of this chapter."

This power to sell was an interest in the land, which vested in James Bell, under his mortgage; he was neither grantor, nor heir of the grantor, in the deed of Ebenezer Fitts to Daniel and Hannah Fitts; and, therefore, he comes within the express terms of the statute, which makes the unregistered deed invalid to hold the land against any person but the grantor and his heirs. And his right to sell under the power is also as much within the reason and policy of the statute, as any other part of his security. He trusted to the security of the mortgage, including the power to sell, and there is no reason why one part of the legal security should be protected more than another, against a prior unregistered conveyance.

And if the power to sell could not be affected by a prior unrecorded deed, of which the mortgagee had no notice, it follows, of course, that such prior deed would not be valid to hold the land against a purchaser under the power.

In this view of the question, it is not necessary, for the disposition of this case, to decide whether the power was executed and the tenant holds the land by that title, or whether he is in as assignee under the mortgage. Both of these titles are protected against the unregistered deed, unless Mr. Bell was charged with actual or constructive notice of it when he took his deed. But as the cause must go to a new trial, and the

question may arise again on another state of facts, and it may be convenient for the parties to understand the views of the Court on this point, they have considered. it, and are of opinion that the tenant must hold as assignee under the mortgage, and not as purchaser under the power.

The quitclaim deed of Bell, and his assignment of the mortgage to Twilight, both bear the same date of April 29, 1837, appear to have been made on the same consideration, and must be regarded as parts of the same transaction, and intended to carry into effect one and the same object. The legal effect will be the same as if the release and assignment had been included in the same instrument. Mr. Bell had an estate as mortgagee, and a power to sell.

The deed was sufficient to assign the mortgage, and so convey the interest of the mortgagee, or, if the preliminary steps in the sale by auction were duly taken, to convey an absolute title to the land by execution of the power. In such case, it is established as authority, that the deed shall operate as a conveyance of the interest, and not as an execution of the power. *Colt* v. *Bishop of Litchfield and Coventry*, Hob. 159 ; *Bennet* v. *Aburrow*, 8 Vezey, 609; *Denn* v. *Roak*, 5 Barn. & Cress. 720; S. C. 2 Bing. 497 ; *Lanley* v. *Sneyd*, 3 Bro. & Bing. 243 ; *Davies* v. *Williams*, 1 Ad. & Ellis, 588; *Bradish* v. *Gibbs*, 3 Johns. Ch. Rep. 551.

On this general ground, Twilight must be held to have taken as assignee of the mortgage, and not as purchaser of the land under the power.

And the particular circumstances of this case are also strong to show that the transaction could not have been understood or intended as an execution of the power. The power was granted to raise the money due on the mortgage by sale of so much of the land as might be necessary for that purpose. Of course, the money raised by the sale was to be applied in payment of the debt and discharge of the mortgage. In this case there was no such application of the money ; on the contrary, the debt is kept on foot and assigned with the mortgage. The debt was not extinguished, but remained in full force, and the creditor was

not confined to his remedy on the mortgage ; he might have enforced payment by suit against Fitts, and compelled him to pay, if he were able. The sale of the land under the power, and the assignment of the debt and mortgage are entirely inconsistent with each other. If both could be valid, the debtor might be compelled to pay his debt to an assignee of the mortgage, and also lose his land by execution of the power; whereas the quitclaim deed, considered merely as a release of the demandant's title in the land, is quite consistent with his assignment of the mortgage.

We are therefore of opinion, that the tenant must claim as assignee of the mortgage, and not as purchaser under the power. And this title is sufficient to defend him against the demandant, unless Mr. Bell was charged with notice of the deed from Ebenezer Fitts to Daniel and Hannah Fitts, under which he now claims by a deed from Hannah Fitts, made after the death of Daniel Fitts, and after the demandant's conveyance to the tenant.

Both parties claim under Ebenezer Fitts, the demandant, under the deed to Daniel and Hannah Fitts, dated July 19, 1824, recorded April 25, 1836 ; the tenant, under the mortgage to James Bell, the demandant, dated and recorded, March 29, 1834. The tenant's title, being under the deed first recorded, he will hold the land, unless Mr. Bell, when he took his mortgage, was charged with such notice of the prior unregistered deed, as would make it a fraud in him to set up his legal title against the equitable estate derived under the prior deed. The case does not find actual notice. For constructive notice the demandant relies, first on a reference in his mortgage deed to a former mortgage made by Fitts to the Exeter Bank; and, in the second place, on the possession of Daniel Fitts under the unrecorded deed to him and his wife.

The language of the statute is express, that no deed shall be valid to hold the land, unless recorded pursuant to the provisions of the act. But by a construction derived from the decisions of Equity Courts in England, if the subsequent purchaser had notice of the prior unrecorded deed, he is not allowed to set up

his legal estate under the statute, to defeat the equitable title, of which he had notice at the time of his purchase ; because this would be to make a fraudulent and dishonest use of the legal advantage which the statute gave him. It is on this ground of fraud alone that evidence of notice has been admitted to control the express language of the statute.

If it were now an open question, it would at least deserve consideration, whether the fact of notice, (which is held to charge the conscience of the subsequent purchaser, and, on the ground of fraud, by an equitable construction, to defeat the clear terms of a statute,) ought to be inferred as a legal consequence from circumstances, which may, or may not, have lead to actual notice of the prior conveyance. It would seem to have been understood, as late as the time of Lord Alvanley, that " nothing short of actual fraud would do," and that the leading cases went upon that ground. *Folland* v. *Stainbridge*, 3 Vezey, 486 ; *Dey* v. *Dunham*, 2 Johns. Ch. Rep. 190. And in *Jackson* v. *Given*, 8 Johns. Rep. 137, it is treated by *Kent*, C. J., as a doubtful point whether " *implied* notice will supply the absence of the registry of the prior conveyance." However, that such notice may be implied in law from certain facts and circumstances must now be considered as the established doctrine in England, and the same rule has been adopted in this State. *Colby* v. *Kenniston*, 4 N. H. Rep. 262 ; *Haddock* v. *Wilmarth*, 5 N. H. Rep. 181.

Of late, however, courts have shown a disposition to restrain and limit the doctrine of constructive notice to clear and unquestionable cases. It is a legal inference, which the court draws as matter of law, and it is now held that it must be founded on fact and circumstances such as raise a presumption too violent to admit of being contradicted by proof. 1 Story's Equity, 387 ; *McMechan* v. *Griffing*, 3 Pick. 149 ; *Rogers* v. *Jones*, 8 N. H. Rep. 264.

And in some jurisdictions legislation has interfered and overthrown the whole doctrine of constructive notice. *Pomroy* v. *Stevens*, 11 Met. Rep. 244 ; *Curtis* v. *Mundy*, 3 Ib. 405 ; *Butler* v. *Stevens*, 26 Maine Rep. 484.

Courts have not been able to lay down positive rules to govern

these questions of constructive notice. Each case must be decided, more or less, on its own circumstances. We think a just and safe interpretation of the statute, requires the cautious and guarded application of a principle which has been admitted to control the plain language of the act. 4 Kent's Com. 172 ; 1 Story on Equity, §§ 399, 400, and note.

The mortgage deed, Fitts to Bell, after a general description of the premises, refers to a former mortgage in these terms : " the said four tracts of land being fully described in a deed of mortgage, bearing date the first day of May, A. D. 1833, made by me to the president, &c., " of the Exeter Bank, as by reference to said deed will appear." The deed to the Exeter Bank, conveyed four parcels of land of one hundred, fifty, eighty, and five acres respectively, and, after a description of the several parcels, adds as follows, " part of the premises above described are subject to a lease and mortgage to Daniel Fitts, and to a lease and mortgage to Sally Fitts, Betsey Fitts, and Hannah Fitts ; as by reference to the Rockingham Records will more fully appear."

When a party claims under a deed which states a former conveyance, the rule is laid down generally, that the party who claims under such deed is charged with notice of the prior deed, and the rule has been applied to the case of a remote deed in a long chain of title. 1 Story on Eq. § 400.

Without deciding whether the application of the rule should be extended so far, in our practice of conveyancing under the registration act, it must be considered as well established, by authority, that when the deed, by which the party took his conveyance of the land, and under which he claims, states a prior title, or refers to a prior deed, under which his title is derived, and which contains a clear and intelligible statement of a prior title, he is charged with constructive notice of that title.

Taking it to be implied, as a legal conclusion, that Mr. Bell, when he took his mortgage, knew the contents of the prior mortgage to the bank, what information did the prior mortgage give him of the unregistered deed from Ebenezer Fitts to Daniel Fitts and wife, dated July 19, 1824 ?

The mortgage to the bank states that parts of the premises

Bell v. Twilight.

were subject to certain encumbrances, but does not say what parts. So far as the language used can be understood in its usual sense, we should infer that Ebenezer Fitts had given four several conveyances of the land; a deed of mortgage and a lease to Daniel Fitts, and a deed of mortgage and a lease to Sally, Betsey, and Hannah Fitts. It does not appear from the case whether the Hannah Fitts mentioned in the mortgage was the wife of Daniel Fitts, or his daughter, or some other person. No one would be likely to suppose from this description that a conveyance from Ebenezer Fitts to Daniel Fitts and his wife, for their lives and the life of the survivor, was intended. The description therefore, of itself, cannot be held to give any notice of the deed, under which the demandant claims.

Would Mr. Bell be put on such inquiries by the recital in the deed as would lead him necessarily to knowledge of the prior title ? The case does not find whether such encumbrances, as are mentioned in the deed to the Bank, in fact existed; that a description like this, of several different conveyances, should be put into the mortgage, when none such had ever in fact been made, must be looked upon as somewhat remarkable; and if there were such conveyances as are mentioned, the deed would give notice of them, and, of course, of no other.

Take the case however to be, that Ebenezer Fitts had in fact made no conveyance of the land but the unrecorded deed in question; the purchaser is referred, for fuller description of these encumbrances, to the public records; but, on examination, he finds that there is no deed of the land on record. The description is thus found, on examination of the records to which he is referred by the description itself, to be erroneous and false in this important point. If we hold him to further inquiry, and suppose that he went to all the parties in succession, who are named in the mortgage as having claims on the land, and that he read or stated over to them the claims they were said to have, as set down in the mortgage, and inquired after their respective interests, they might well have answered that they had no such deeds or titles, because none such in fact existed. Such inquiries as a man of ordinary prudence would be likely to make, might or might not

44 *

bring him to a knowledge of the deed. This is not sufficient to charge a party with constructive notice. We think, therefore, that the mortgage deed to the Bank contained no such description of this unregistered deed as would, of itself, amount to notice; or such as should put the purchaser upon inquiries, that must, as a legal conclusion, lead him to knowledge of the deed.

Nor does the evidence reported, show such open, visible, and exclusive possession in Daniel Fitts as will amount to constructive notice of his title. The farm, after the conveyance to Daniel and Hannah Fitts, appears to have been the general home and residence of Ebenezer Fitts. At the most, it was but a mixed and ambiguous possession in him and Daniel Fitts. The temporary absence of Ebenezer Fitts at Exeter, is quite consistent with his general ownership of the farm. The evidence shows that he provided, at least in part, for the cultivation and management of the farm during that absence. That his infirm father, whom he was bound by law to support, if he had ability, should they remain on the farm during his absence, would raise no legal presumption that the father claimed any title in the land that he had conveyed to the son ten years before.

The conclusion on the whole case is, that the verdict must be set aside, and a

*New trial granted.*